Day, J.
 

 Two questions are presented by this record: (1) "Was the sentence entered by the trial court to six months imprisonment in the Ohio Reformatory for Women at Marysville, Ohio, and payment of a $200 fine and the costs of prosecution, and a further commitment for failure to pay such fine and cost, contrary to law? (2) Is the law constitutional under which the sentence was imposed; namely, .the law providing for the Ohio Reformatory for Women?
 

 As to the legality of the sentence imposed, it is to be noted that the section under which the same was given is as follows:
 

 Section 2148-7, General Code:
 

 “After the issuance of the first proclamation hereinbefore referred to, it shall be unlawful to sentence any female convicted of a felony to be confined in’ either the Ohio penitentiary or a jail, workhouse, house of correction or other correctional or penal institution, and after the issuance of the second proclamation it shall be unlawful to sentence any female convicted of a misdemeanor or delinquency to be confined in any such place, except in both cases the reformatory herein provided for, the girls’ industrial school or other in
 
 *353
 
 stitution for juvenile delinquency,
 
 unless such person is over sixteen years of age and has been sentenced for less than thirty days, or is remanded to jail in default of payment of either fine or cost or both, which will cause imprisonment for less than thirty days, provided that this section shall not apply to imprisonment for contempt of court.”
 

 Section 2148-9, General Code:
 

 “All provisions of law relating to suspension of sentences of persons sentenced to confinement in the Ohio penitentiary and the Ohio state reformatory shall be applicable to persons sentenced to the Ohio reformatory for women.
 

 “Courts imposing sentences to the Ohio reformatory for women shall mate them general, and not fixed or limited in their duration. *
 
 * *
 
 In case of commitments for misdemeanor or delinquency the term of such imprisonment shall not be more than three years, but such person shall be eligible for parole as follows: Persons committed for the first time, after imprisonment for two months; for second time, after four months; for third or greater time, after six months; and provided that they shall be continued upon parole for at least one year before receiving final discharge.
 

 “If, through oversight or otherwise, a sentence to said reformatory should be for a definite period, it shall not for that reason be void, but the person so sentenced shall receive the benefits and be subject to the liabilities of this act in the same manner as if she had been sentenced in the manner required by law. In such case the Ohio board of administration shall deliver to each person a
 
 *354
 
 copy of this act and written information of her relations to them.”
 

 The provisions of the Criminal Code (section 12423, General Code), with reference to assault and battery, make the maximum penalty therefor imprisonment not to exceed six months, or a fine not to exceed $200, or both, and costs. Under the terms of the sentence imposed the fine and costs, if not paid, were to be credited at the rate of 60 cents per day for each day of confinement, as provided by law, which would cover a greater period of time than less than thirty days.
 

 This record does not affirmatively show that this fine of $200 and costs amounting to $172.74' were paid before the resentencing, although it is claimed in argument that the petitioner would have been able to produce the same. In any event, Rebá Fenwick went into the custody of the sheriff and was locked up in jail, having been surrendered by her bondsman, George W. Mannix, Jr., and it does not affirmatively appear that the trial judge ever ordered the accused into the custody of the sheriff. There does not appear to have been any order of commitment or mittimus given the sheriff by the clerk of the court, as is provided in Section 13716, General Code of Ohio, which reads as follows:
 

 “When a person convicted of an offense is sentenced to imprisonment in jail, the court or magistrate
 
 shall order him into the custody of the sheriff
 
 or constable, who shall deliver him
 
 with the record
 
 of his conviction, to the jailer, in whose custody he shall remain, in the jail of the county, until the term of his imprisonment expires or he is otherwise legally discharged.”
 

 
 *355
 
 The testimony of the sheriff upon the point, as disclosed by the record, is:
 

 “Q. Did you have entry to show sentence against Mrs. Fenwick? A. No, sir.
 

 “Q. Did you have official notice how long to keep her? A. No, sir.
 

 “Q. The only custody you had of Reba Fenwick was sueh as was given you by her counsel and without any order of the common pleas court? A. I met them at the door, and they told me she was sentenced to twenty-nine days.”
 

 Judge Teegarden, the trial judge, testified as follows:
 

 “Q. And that sentence was what? A. The court pronounced sentence of twenty-nine days in the county jail, a fine of $200 and the costs of prosecution of the ease.
 

 “Q. Upon the pronouncing of that sentence by you what then became of Mrs. Fenwick? A. I do not know.
 

 “Q. As a part of the sentence did the court of eommon pleas remand her to the custody of the sheriff? A. I did not.
 

 “Q. Later in the day did you discover that Mrs. Fenwick was in the jail? A'. Yes, sir. I learned that she was in jail. I had supposed from statement of Mr. Billingsley that she was not. *AA JA tF w
 

 “Q. And Mrs. Fenwick was brought before you A. She was.
 

 “Q. By whom? A. I am not certain — Mrs. Brown and the deputy or sheriff.
 

 “Q. From the county jail? A. I presume they got her from the county jail.
 

 “Q. At the time what action was taken by
 
 *356
 
 yourself, sitting as judge? A. Mr. Mannix and the prosecutor were present, and I told them that the sentence I pronounced in the morning was illegal and not authorized. I recalled the pronouncing of the sentence pronounced in the morning and I was ready to pronounce another sentence. At that time Judge Mannix asked that the matter be postponed until the next day. I told him that was a reasonable request. As to the question of the legality of her sentence — Judge Mannix requested that she remain in the custody of the sheriff over night, and I indicated that inasmuch as she had given bond that might not be legal; then he suggested that she remain with Mrs. Brown in the other part, and I indicated that if she could voluntarily remain there she could voluntarily leave Mrs. Brown, and Mannix surrendered.”
 

 It would appear from this testimony and other parts of the record that this confinement in the jail of the county for the eight hours was purely custodial, and was not within the terms of the provision of Section 1371'6, General Code. In fact no proper mittimus of record could have been given to the sheriff, for the so-called sentence was not journalized.
 

 This court has frequently held that the court can speak only by its journals. In
 
 Coe
 
 v.
 
 Erb,
 
 59 Ohio St. 259, 263, 52 N. E. 640, 641 (69 Am. St. Rep., 764), it was said:
 

 “The
 
 requirement that all judgments must be entered on the journal carries the implication that until that is done the judgment is inchoate only; it is incomplete. Though possessing the character
 
 *357
 
 of potentiality it lacks the character of actuality, and hence is without probative force.”
 

 In
 
 Industrial Commission of Ohio
 
 v.
 
 Musselli,
 
 102 Ohio St. 10, 130 N. E. 32, it was held:
 

 “The court speaks through its journals and a judgment is not rendered until it is reduced to a journal entry.”
 

 See, also,
 
 Jones
 
 v.
 
 McClaughry,
 
 169 Iowa, 281, 151 N. W. 210;
 
 State
 
 v.
 
 Huber,
 
 8 Kan. 447; 16 Corpus Juris, 1316.
 

 Being of the opinion that the original oral sentence was invalid and illegal, that the same not having been journalized the court a.t the same term had a right to resentence, the accused, and that her incarceration in the jail was only for custodial purposes, the petitioner does not show sufficient-grounds to be entitled to the writ prayed for.
 

 The remaining question is as to the constitutionality of the law providing for sentencing female offenders convicted of misdemeanors to the Ohio Reformatory for Women.,
 

 Whether this question can be raised by
 
 habeas corpus
 
 is open to serious doubt. It was held by this court in
 
 In re Allen,
 
 91 Ohio St. 315, 110 N. E. 535:
 

 “Where a person who is convicted of a crime under a statute prescribing punishment by imprisonment in the penitentiary for a definite number of years is given an indeterminate sentence, the question of the validity of the statute authorizing such indeterminate sentence cannot be raised in a proceeding in
 
 habeas corpus
 

 This court also held, in
 
 Yutze
 
 v.
 
 Copelan,
 
 109 Ohio St. 171, 142 N. E. 33, opinion by Jones, J., that —
 

 
 *358
 
 “A writ of
 
 habeas corpus
 
 will not lie, to test the constitutionality of a statute or ordinance, in favor of one who has been convicted, where the criminal court wherein conviction was obtained had jurisdiction or power to determine the question of constitutionality. In such case the writ cannot be made a substitute for proceedings in error.”
 

 Error might have been prosecuted from the judgment of the court of common pleas, raising the question of the constitutionality of the act under which this sentence was imposed, the same as was done upon her original sentence. "We call attention to the cases cited in the opinion in
 
 Yutze
 
 v.
 
 Copelan, supra,
 
 especially to the United States Supreme Court case of recent announcement.
 

 But, waiving this question, is there a violation of any constitutional right shown? The maximum penalty for assault and battery under the provisions of the General Code, as noted above, is six months’ imprisonment, and a $200 fine and costs. This sentence of the petitioner in the premises does not exceed that amount, so that the imprisonment is not for any greater period of time than might have been imposed upon any other offender, whether male or female. It is the contention of petitioner that Section 2148-9, General Code, provides, “in case of commitments for misdemeanor or delinquency the term of such imprisonment shall not be more than three years,” and that, it being apparent that for like offenses imprisonment for a male offender would be for a shorter period than three years, the act here in question, making this discrimination, would be unconstitutional. - Now, as long as this petitioner is not restrained of her
 
 *359
 
 liberty for a longer period than permitted by the assault and battery statute, the same as any person convicted thereunder, she is not discriminated against.
 

 This record not disclosing but that a male offender might have received for a like offense the same sentence that the petitioner received, we fail to find that any constitutional rights of the accused have been invaded.
 

 The fact that the state provides a separate institution for the imprisonment of women, and that those convicted of both felonies and misdemeanors are confined therein, does not render the law so providing unconstitutional, the same being a place of imprisonment for all female offenders. The action of the Legislature in so doing was highly praiseworthy and humane, and the purpose was to keep the unfortunate women charged with a criminal offense from having to be incarcerated in the same institution with the male offender. So long as the same punishment for the same offense is meted out to both alike we can see no deprivation of equal application of the law.
 

 Entertaining these views, we are of opinion that the Court of Appeals in dismissing the petition for the writ of
 
 habeas corpus
 
 was right in its conclusions, and that its judgment in so doing should be and is hereby affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Robinson, Jones, Matthias and Allen, JJ., concur.
 

 Wanamaker, J., not participating.