**UNITED STATES ex rel.
Carrie ROBINSON**

v.

**Janet YORK, Superintendent, Connecticut
State Farm for Women.**

**Civ. No. 12376.**

United States District Court
D. Connecticut.

Feb. 28, 1968.

Howard Baran, Ralph E. Sluis, Middletown, Conn., for plaintiff.

John Rose, Jr., Woodbridge, Conn., Edmund W. O'Brien, State's Atty., Norwich, Conn., for defendant.

## MEMORANDUM OF DECISION ON PETITION FOR A WRIT OF HABEAS CORPUS

BLUMENFELD, District Judge.

The petitioner, Carrie Robinson, age thirty-eight, by this petition for a writ of habeas corpus challenges the constitutionality of Conn.Gen.Stats. § 17–360, under the provisions of which she was sentenced to the Connecticut State Farm for Women, Niantic, for an indefinite term not to exceed three years. That statute provides:

"Women over sixteen years of age belonging to any of the following classes may be committed by any court of criminal jurisdiction to said institution: First, persons convicted of, or who plead guilty to, the commission of felonies; second, persons convicted of, or who plead guilty to, the commission of misdemeanors, including prostitution, intoxication, drug-using and disorderly conduct; third, unmarried girls between the ages of sixteen and twenty-one years who are in manifest danger of falling into habits of vice or who are leading vicious lives, and who are convicted thereof in accordance with the provisions of section 17–379; fourth, women sentenced to jails. Only such offenders may be committed to said institution as in the opinion of the trial court will be benefited

physically, mentally or morally by such commitment, and, immediately upon commitment, a careful physical and mental examination, by a competent physician, shall be made of each person committed. The court imposing a sentence on offenders of any class shall not fix the term of such commitment. Commitment to said institution shall be made within one week after sentence is imposed, but no offender shall be committed to said institution without being accompanied by a woman in addition to the officer. The trial court shall cause a record of the case to be sent with the commitment papers on blanks furnished by the institution. The duration of such commitment, including the time spent on parole, shall not exceed three years, except when the maximum term specified by law for the crime for which the offender was sentenced exceeds that period, in which event such maximum term shall be the limit of detention under the provisions of this chapter, and, in such cases, the trial court shall specify the maximum term for which the offender may be held under such commitment." [1]

Petitioner contends that § 17–360 violates the equal protection clause of the fourteenth amendment to the Constitution of the United States by permitting adult women to be imprisoned for periods in excess of the maximums applicable to men guilty of the same substantive crimes.[2]

On November 18, 1966, before the Ninth Circuit Court in Middletown, Mrs. Robinson pleaded guilty to one count of breach of the peace and one of resisting arrest, misdemeanors carrying maximum sentences respectively of one year and six

months.[3] Conn.Gen.Stats. §§ 53–174, 53–165. Seven months later, on June 23, 1967, petitioner was released on parole from the State Farm. On October 11, 1967, again in the Ninth Circuit Court, she entered guilty pleas to charges of being found intoxicated and willful destruction of property. The sentences entered on these counts were suspended and petitioner was returned as a parole violator to the State Farm under her original sentence.

### Exhaustion

Before reaching the merits, respondent argues that a writ cannot be granted in this case because petitioner has failed to exhaust her state remedies as required by 28 U.S.C. § 2254(b). Both a failure to appeal her convictions and an alleged failure to seek habeas in the state courts are alleged. As to the first point, having pleaded guilty, she might be held to have waived all non-jurisdictional defects in the prior proceedings, United States ex rel. Glenn v. McMann, 349 F.2d 1018, 1019 (2d Cir. 1965), cert. denied, 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966), but it is unlikely that she or her counsel would know that the sentence for an indefinite term at the State Farm might be for a term longer than the statutes defining the specific offenses themselves provided. But unless there was a knowing and intentional waiver of her right to appeal, the failure to do so does not operate per se to bar a petition for habeas corpus. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). There is no indication in this case that she "deliberately bypassed" whatever right to appeal she may have had. Id. at 438–439, 83 S.Ct. 849, 9 L.Ed.2d 869. See

1. This is the version of §. 17–360 contained in the 1965 supplement to the General Statutes in effect at the time Mrs. Robinson was sentenced in November 1966. Two subsequent substitutions for the section (in practical effect amendments) were approved in May and June of 1967, apparently without reference to each other. Public Act 152 § 20, May 25, 1967; Public Act 555 § 74, June 21, 1967. While these changes leave some confusion as to

the present wording of the section in some particulars, they have no bearing on the determinations reached in this action.

2. No provision comparable to § 17–360 exists for adult males.

3. These were separate counts in a single information charging the commission of both offenses on the same date.

Labat v. Bennett, 365 F.2d 698 (5th Cir. 1966) (en banc), cert. denied, 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334 (1967). Consistent with the view of Mr. Justice Black that the principles judicially established for the delimitation of habeas corpus "must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty," Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), it is to be presumed that she did not waive fundamental constitutional rights. United States v. Drummond, 354 F.2d 132, 148 (2d Cir. 1965) (en banc), cert. denied, 384 U.S. 1013, 86 S.Ct. 1968, 16 L.Ed.2d 1031 (1966).

■ No state procedural remedy other than habeas corpus was available to test the legality of her detention. That is an appropriate remedy, for as said of the writ in Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963), it "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against the erosion of their right to be free from wrongful restraints upon their liberty." And see Fay v. Noia, 372 U.S. at 401–402, 83 S.Ct. at 829 where the Supreme Court said of what is called the Great Writ:

> " * * * its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."

However, when she sought to avail herself of that remedy the state barred her from it. Petitioner's counsel, serving without fee and working out of an office sponsored by the Federal Office of Economic Opportunity, attempted to file petitions for a writ in the Court of Common Pleas, New London County,

and in the Superior Court for New London County. In both cases, he was informed by letter from the clerk of the court that although petitioner was impoverished there was no authority for entering an application without payment of an entry fee of $30, in the case of the Court of Common Pleas, and of $45 in the Superior Court. The inability to pay the entry fees because of indigency cannot be used to deny "the precious right of access to the courts guaranteed under our system of government to all who claim to be wronged." Ex parte Rosier, 76 U.S.App.D.C. 214, 230, 133 F.2d 316, 332 (D.C.Cir. 1942). This court has recently ruled that when an indigent state prisoner's tender of a petition for a writ of habeas corpus is rejected because of her inability to pay the entry fee, the exhaustion requirement has been satisfied. United States ex rel. Rush v. York, 281 F.Supp. 779 (D.Conn.1967). That ruling is adhered to.

■ Another preliminary question, not adverted to by counsel, is whether a single District Court Judge has jurisdiction to pass upon the constitutionality of a state statute in a habeas corpus proceeding in view of the requirement for a three-judge court under 28 U.S.C. § 2281. It has been authoritatively decided that § 2281 "has no relation to Habeas Corpus proceedings." United States ex rel. Murphy v. Warden of Clinton Prison, 29 F.Supp. 486, 489 (N.D.N.Y.1939), aff'd, 108 F.2d 861 (2d Cir.), cert. denied, 309 U.S. 661, 60 S.Ct. 583, 84 L. Ed. 1009 (1940); United States ex rel. Laino v. Warden of Wallkill Prison, 246 F.Supp. 72, 92, n. 16 (S.D.N.Y.1965), aff'd, 355 F.2d 208 (2d Cir. 1966) (per curiam).

### Denial of Equal Protection

Starting with the undisputed reading of § 17–360 to permit women to be sentenced for longer terms than it or any other statute permits for men found guilty of committing identical offenses, the question presented is whether the sentence of the petitioner to an indefinite term of imprisonment not to exceed

three years because she is a woman over the age of sixteen denied to her equal protection of the laws guaranteed by the fourteenth amendment.[4]

### Legislative Discretion

■■ It must be recognized that wide discretion is allowed to the state's legislature to establish reasonable classifications in promoting the safety and welfare of those within its jurisdiction. As the Supreme Court noted in Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), a "large deference" must be paid to the state in passing on the validity of a classification effected by its criminal statutes.

"[A] State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment. Nor is it prevented by the equal protection clause from confining 'its restrictions to those classes of cases where the need is deemed to be clearest.' * * * 'the law does all that is needed when it does all that it can, indicates a policy, applies it to all within the lines, and seeks to bring within the lines all similarly situated so far and so fast as its means allow.' " (316 U.S. at 540, 62 S.Ct. at 1113).

### Basis of the Classification

■ This deference to legislative classifications can extend to classifications based on sex. For example, the Supreme Court has upheld an Oregon statute forbidding women to work more than ten hours a day, Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908); a Michigan rule preventing most females from becoming licensed bartenders, Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); and a Florida enactment excluding women from jury duty unless they affirma-

tively volunteer to serve, Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). In each of these cases the Court found that the classification rested on "some difference which [bore] a reasonable and just relation to the act in respect to which the classification [was] proposed;" that it was not "made arbitrarily, and without any such basis." Gulf, C. & S. F. Ry. v. Ellis, 165 U.S. 150, 155, 17 S.Ct. 255, 257, 41 L.Ed. 666 (1897). Cf. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

Thus, in Muller the Court took account of the differences in physical structure, strength and endurance of women, as well as the importance of their health to the future well being of the race, in sustaining the work hour limitation, 208 U.S. at 422, 28 S.Ct. 327, 52 L.Ed. 556. It noted a woman's family and home responsibilites in upholding the jury duty exemption in Hoyt, 368 U.S. at 62, 82 S.Ct. 163, 7 L.Ed.2d 122, and acknowledged in Goesaert that the Michigan legislature might legitimately be avoiding the "moral and social problems" which it believed could be produced by females tending bar in saloons, 335 U.S. at 466, 69 S.Ct. 199, 93 L.Ed. 165.

### Purpose of Classification

■ While it would be difficult to find a more distinctive basis for classification of adults than the natural difference between a man and a woman, that does not end judicial inquiry. Although the law in question is applicable alike to all adult women, "[j]udicial injury under the Equal Protection Clause * * * does not end with a showing of equal application among the members of the class defined by the legislation. The courts must reach and determine the question whether the classification[s] drawn in the statute are reasonable in light of its purpose * * * "—in this

---

4. Amendment XIV, Sec. 1:
 "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any

person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

case whether greater punishment for women is an arbitrary or invidious discrimination between adult men and adult women who commit a breach of the peace or resist arrest. McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L. Ed. 1655; Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551. Since legislative discretion is limited to exercise for reasonable purposes, the court must determine whether the classification in § 17–360 "bears a * * * just relation to the act in respect of which the classification is proposed * * *." Gulf, C. & S. F. Ry. v. Ellis, 165 U.S. at 155, 17 S.Ct. at 257; McLaughlin v. Florida, 379 U.S. at 191, 85 S.Ct. 288, 13 L.Ed.2d 228; Carrington v. Rash, 380 U.S. 89, 93, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

### The Relation Between Punishment and Sex of the Offender

This statute, which singles out adult women convicted of misdemeanors for imposition of punishment by imprisonment for longer terms than may be imposed on men, must be supported by a full measure of justification to overcome the equal protection which is guaranteed to them by the fourteenth amendment. In Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), where penalties were imposed on the basis of racial classification, the Supreme Court enunciated a strict standard for testing equal protection:

"At the very least, the Equal Protection Clause demands that racial classifications, especially suspect in criminal statutes, be subjected to the 'most rigid scrutiny.' Korematsu v. United States, 323 U.S. 214, 216 [65 S.Ct. 193, 194, 89 L.Ed. 194] (1944), and, if they are ever to be upheld, they must be shown to be necessary to the accomplishment of some permissible state objective * * *." (388 U.S. at 11, 87 S.Ct. at 1823).

While the Supreme Court has not explicitly determined whether equal protection rights of women should be tested by this rigid standard, it is difficult to find any reason why adult women, as one of the specific groups that compose humanity, should have a lesser measure of protection than a racial group. The same sort of "strict scrutiny" has been applied for the protection of habitual criminals who were held to have been invidiously discriminated against in violation of equal protection by Oklahoma's sterilization law. Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655. The Supreme Court stated:

"We are dealing here with legislation which involves one of the basic civil rights of man [referring to the right to have offspring]. *, * * We mention these matters not to reëxamine the scope of the police power of the States. We advert to them merely in emphasis of our view that *strict scrutiny* of the classification which a State makes in a sterilization law is essential, lest unwittingly or otherwise invidious discriminations are made against groups or types of individuals in violation of the constitutional guaranty of just and equal laws." (Emphasis added) (316 U.S. at 541, 62 S.Ct. at 1113).

Cf. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915).

Turning now to the statute attacked by this action. The state seeks to justify § 17–360 by noting that it is one among a number of provisions in that title of the General Statutes dealing with "Humane And Reformatory Agencies And Institutions" as distinguished from the "Penal Institutions" authorized in Title 18, and that it is, therefore, "part of the integral whole which constitutes the State's attempt to provide for women and juveniles a special protection and every reformative and rehabilitative opportunity." [5] Respondent's Brief at 18.

5. What scant legislative history there is does reveal a belief by those who sup-

ported it at a hearing before the Joint Standing Committee on Humane Insti-

This purports to be a way of concealing the abrasive nature of imprisonment under the charming image of an educational institution. But this should not blind one to the fact that the institution is still a place of imprisonment.

There are a number of things that could well be said in defense of separate institutions for women, but merely calling the State Farm for Women a reformatory, and, therefore, distinguishable from the penal system does not make it so. What Mr. Justice Fortas noted in the recent case of In re Gault, 387 U.S. 1, 87 S.Ct 1428, 18 L.Ed.2d 527 (1967), with regard to juvenile institutions is equally applicable here:

> "It is of no constitutional consequence —and of limited practical meaning —that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with whitewashed walls, regimented routine and institutional hours * * *.' * * * His world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide." (387 U.S. at 27, 87 S.Ct. at 1443).

Moreover, none of the special features which might justify distinguishing the state's treatment of juveniles[6] from that it accords adults exist in the case of commitment of adult women to the State Farm. E. g., Conn.Gen.Stats. § 17–72 (adjudication of juvenile court that a

child is delinquent is not a criminal conviction); Conn.Gen.Stats. § 17–73 (delinquency proceedings inadmissible as evidence in some criminal prosecutions); Conn.Gen.Stats. § 17–67 (juvenile court hearings held in private); Conn.Gen. Stats. § 17–66 (pre-hearing investigations).

Even assuming, as the state alleges, that there is a difference in the quality of treatment and conditions of incarceration at the Farm, those facts are not enough to justify a longer period of imprisonment for adult women as opposed to adult men. Of course, imprisonment need not be all of one kind. There are ample reasons for separate institutions, and the state may permissibly introduce priorities and coordination between them; but if it matters what kind of facilities are provided, it matters even more that there shall be no invidious discrimination with respect to the length of imprisonment.

In Connecticut the predominant criterion for judgment imposed on those convicted of violating its criminal laws continues to be punishment. When it came to a discussion of values in a system of penology some forty years after § 17–360 had been enacted, the Governor's Prison Study Committee's proposal for the establishment of the Sentence Review Board,[7] rather tartly remarked:

> "We do not accept the simplistic view that the only purpose of sentencing is the rehabilitation of the individual offender. Deterrence of others through punishment and prevention through restraint are also important goals of the criminal law. This complex of objectives, including rehabilitation, seems best suited to an initial adjust-

tutions in February 1917 that the new institution would provide a reformative opportunity not available to women in the prison and jails. That hope was based mostly on features of the proposed farm which are today present in the prison as well or are of little substance, e. g., farm work, a rural location, a name with less stigma attached to it, a woman superintendent. Hearings on S.B. 12 and S.B.

126 Before the Joint Standing Committee on Humane Institutions at 73–86 (February 21, 1917).

6. It should be noted that such features were not enough to justify what was held to be a denial of due process of law in *Gault*.

7. Conn.Gen.Stats. §§ 51–194, 51–197 (1958).

ment by judicial action in the sentencing process." [8]

This may be regarded as a fair statement of penological principles to guide Connecticut's judiciary at the time of sentencing: Informed by what the convicted defendant had done, the court should determine what his future should be; there are two matters which should particularly concern the court, deterrence of others and punishment of the offender. Both touch the liberty of the defendant.

Insofar as the future protection of society is concerned, the state has failed to carry its burden in support of the proposition that a greater period of imprisonment is necessary for the deterrence of women than for men. And it is hardly an open question that women, as such, do not deserve greater punishment than men. In our society any dscrimination in the treatment of women is benignly in their favor.

 Nor is there any support for the claim that women require a longer time to become rehabilitated as useful members of society. Indeed, where rehabilitation under supervision without physical restraint is deemed suitable, any person found guilty of a crime may be placed on probation, without regard to sex. Conn.Gen.Stats. § 54–111. While it might not be impossible to conjure up special circumstances where less onerous conditions of restraint could be argued by some to compensate for a lengthier imprisonment, such an argument would be as applicable to men as to women. Recognizing that in interpreting the Constitution the establishment of relationships between remote concepts can be dangerously misleading, Mr. Justice Frankfurter pointed out: "* * * the Constitution is 'intended to preserve practical and substantial rights, not to maintain theories.' Davis v. Mills, 194 U.S. 451, 457, [24 S.Ct. 692, 48 L.Ed. 1067]." Rochin v. California, 342 U.S. 165, 174, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952).

Among the rights protected by the Constitution, next to life itself, none is more basic than liberty. However narrowly "liberty" may be defined, this statute restrains it. No punishment which a state may impose weighs more heavily on an individual than imprisonment in an institution.

 Connecticut recognizes no distinction based on the sex of the individual regarding protection of person or property. It accords no higher position to men in such matters than to women. Neither should it, in the name of serving their own good or otherwise, justify a longer period of deprivation of personal liberty for women. Nor has it offered any proof, or even suggested, that it was necessary for the protection of society to forestall women convicted of breach of peace or resisting an officer from again committing those crimes to imprison them for a longer time than men convicted of those same offenses. It may be granted that a broad discretion should be given to the courts in order that the punishment imposed should bear a proper relation to the enormity of the offense. But the circumstances which may affect the sentences must be circumstances connected with the crime. That there are differences between women and men cannot be denied, but that these differences justify a longer imprisonment of women cannot be sustained. There is no connection whatsoever between a breach of peace or resistance to arrest and being a woman. Those misdemeanors may be committed by persons of either sex.

Nothing in the different nature of men and women noted by the Supreme Court in the *Muller, Goesaert,* and *Hoyt* cases suggests any reasonable or just relation between the misdemeanors involved here and the inequality in potential punishments permitted by § 17–360. Yet, such a relation would have to be found if the classification at issue is to be upheld. Most of the state courts which have faced similar questions have found no

8. Governor's Prison Study Committee, A Procedure for Reviewing Sentences, at 6–7 (Mimeo No. 19, 1956), cited in R. Donnelly. J. Goldstein, & R. Schwartz, Criminal Law, at 28 (1962).

reason to justify longer imprisonment for women than for men. State v. Beddow, 32 N.E.2d 34 (Ct.App.Ohio 1939) (statute providing for incarceration of women on a state farm for indeterminate periods upheld where men and women faced same maximum limits); Ex parte Brady, 116 Ohio St. 512, 157 N.E. 69 (Sup.Ct.1927) (habeas denied where statute provided for same maximum as men faced, the court concluding that "so long as both the man and the woman may not be imprisoned for a longer or lesser period than that fixed by the statute, there is no discrimination in classification." (at 72)); Ex parte Fenwick, 110 Ohio St. 350, 144 N.E. 269 (Sup.Ct.Ohio 1924), appeal denied sub nom., Fenwick v. Myers, 275 U.S. 485, 48 S.Ct. 27, 72 L.Ed. 386 (1927) (habeas denied where woman sentenced to a definite term under a statute like § 17–360 since she "[was] not restrained of her liberty for a longer period than permitted by the assault and battery statute, the same as any person convicted thereunder * * *." (144 N.E. at 271) (dicta)); Morgan v. State, 179 Ind. 300, 101 N.E. 6 (1913) (statute permitting commitment of males found not guilty of murder by reason of insanity to Indiana colony for the criminally insane without an insanity inquest held unconstitutional); contra, Ex parte Gosselin, 141 Me. 412, 44 A.2d 882 (1945) (statute fixing maximum indeterminate sentence for women at 3 years upheld despite fact that the maximum faced by men was 2 years, the court concluding simply that the legislative classification was reasonable for the accomplishment of rehabilitation).

 This much is clear enough—the application of the provisions of § 17–360 to the sentences of the petitioner in this case constituted an invidious discrimination against her which is repugnant to the equal protection of the laws guaranteed by the fourteenth amendment.

9. There is no room for a contention that the petitioner is not serving both of the sentences she is attacking. See Rowe ·v. Peyton, 383 F.2d 709, 716–18 (4th Cir. 1967).

*Eligibility for Immediate Release*

A further point merits discussion.

 In the mittimus committing the petitioner to the State Farm, it is not stated whether the sentences imposed for each of the misdemeanors of which Mrs. Robinson was convicted were to run concurrently or consecutively. If the latter, she faced a potential commitment of six years.[9] However, this ambiguity is resolved by application of the established Connecticut rule that if a person has received separate sentences to imprisonment in the same penal institution, the judgments containing no provision that they shall run consecutively, they will be held to run concurrently. That rule has been applied both to incarceration in the State Prison, Redway v. Walker, 132 Conn. 300, 43 A.2d 748 (1945), and to indeterminate sentences to the State Reformatory similar to those imposed here. State v. Nacsin, 23 Conn.Supp. 214, 180 A.2d 643 (1962). It should be applied in this case as well.

 It is also the rule that a sentence which is invalid because it is in excess of what the law permits is not invalid in its entirety, but only as to that portion which exceeds what is permissible. United States v. Pridgeon, 153 U.S. 48, 62, 14 S.Ct. 746, 38 L.Ed. 631 (1894); Browning v. Crouse, 356 F.2d 178 (10th Cir.), cert. denied, 384 U.S. 973, 86 S.Ct. 1864, 16 L.Ed.2d 683 (1966).

 Application of both these rules to the instant case means that to the extent that the sentences imposed on the petitioner were valid she completed service of them after one year including time spent on parole. That being the case, there is no merit to the suggestion that she be resentenced, so as now to expose her to the possibility of sentences for the maximum permissible terms to run consecutively.[10]

10. Even if the circumstances of this case should be deemed so unusual as to warrant only her release, contingent upon a resentencing within constitutionally permissible limits, United States ex rel.

Since the petitioner has concurrently served more than six months of a sentence for the offense of resisting arrest and more than one year of the sentence for breach of the peace, the maximums which might be constitutionally imposed, law and justice require that an order for the petitioner's immediate release should be entered.

This opinion constitutes the court's findings of fact and conclusions of law.

It is ordered that the respondent shall release and absolutely discharge the petitioner from custody as promptly as possible consistent with the administrative regulations at the State Farm for Women.

If an appeal from the following order is desired, this will constitute a certificate of probable cause under 28 U.S.C. § 2253.

Brown v. Reincke, 266 F.Supp. 83 (D. Conn.1966), of consecutive maximum sentences, that would not render her petition for habeas inappropriate. It is enough if there is the possibility that upon resentencing the petitioner would receive a sentence shorter than that already served. United States ex rel. Durocher v. La Vallee, 330 F.2d 303, 305, n. 2 (2d Cir.) (en banc), cert. denied, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964); United States ex rel. Smith v. Martin, 242 F.2d 701 (2d Cir. 1957) (per curiam); United States ex rel. Foreman v. Fay, 184 F.Supp. 535 (S.D.N.Y.1960). Cf. Arketa v. Wilson, 373 F.2d 582 (9th Cir. 1967) (habeas permitted where the only result would be opening the possibility of probation to petitioner).