Charles **BOLLING** et al., Plaintiffs,

v.

John R. **MANSON**, Commissioner of Connecticut Department of Corrections, et al., Defendants.

Civ. A. No. 14932.

United States District Court, D. Connecticut.

July 12, 1972.

Judith M. Mears, Conn. Civil Liberties Union, New Haven, Conn., and Elliott Taubman, Legacy, Inc., Norwich, ·Conn., for plaintiffs.

Stephen J. O'Neill, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen. of State of Connecticut, Hartford, Conn., of counsel), for defendants.

## MEMORANDUM OF DECISION
### FINDINGS OF FACT and
### CONCLUSIONS OF LAW

Before SMITH, Circuit Judge, and BLUMENFELD and CLARIE, District Judges.

J. JOSEPH SMITH, Circuit Judge:

The plaintiffs, citizens of the United States and of the State of Connecticut, sue under the Civil Rights Act, 42 U.S. C. § 1983, for injunctive relief against those provisions of the Connecticut statutes which permit inmates of Connecticut prisons and jails to earn "good time" but which make no such procedure applicable to inmates sentenced to indefinite or "reformatory" sentences to the Connecticut Correctional Institution, Cheshire, or the Connecticut Correctional Institution, Niantic, thus allegedly denying them equal protection of the laws. Jurisdiction is conferred by 28 U.S.C. § 1343. Plaintiffs sue on their own behalf and on behalf of those similarly situated, that is, either incarcerated or released on parole from Cheshire or Nian-

tic on indefinite sentences.[1] A three-judge district court was convened to hear this challenge to the constitutionality of a state statute and request for injunctive relief, pursuant to 28 U.S.C. §§ 2281, 2284.

The statutes at issue are Connecticut General Statutes §§ 18–7, 18–23 and 18–53; § 18–7 awards five days per month of good time to be subtracted from sentences to the state prison and, in addition, at the discretion of the warden, an extra five days a month reduction for meritorious achievement and exemplary conduct in the prison. Under § 18–23, all statutes, including § 18–7, which are applicable to inmates at the state prison for men are made applicable to those inmates at Niantic, the prison for women, who but for the existence of that institution, would be incarcerated at the state prison. § 18–53 awards five days commutation for each month or 30 days of sentence for prompt obedience to the rules of a community correctional center, or jail. A recent enactment of the Connecticut legislature extended the five day a month good time grant to those inmates of Cheshire serving definite terms.[2] Inmates transferred from the state prison at Somers or other correctional institutions to Cheshire (10–20% of the Cheshire population) continue to receive the lessening benefit of good time. Conn.Gen.Stats. § 18–7. Only the named plaintiffs and their class, sentenced to Cheshire or Niantic on indefinite terms, are denied good time allowances.[3]

It was conceded by the state at the hearing on this action that the inmates at Cheshire who are serving definite terms or who have been transferred there from Somers are treated identically to those originally sent to Cheshire on indefinite sentences. They work and have recreation and classes together, and they are subject to the same regulations and disciplinary procedures. Nothing peculiarly rehabilitative, or reform-oriented, is provided the indefinitely confined inmates.[4] And at Niantic, the women serving indefinite sentences, who comprise about 25% of the population,

---

1. Under Conn.Gen.Stats. § 18–73, "any male person between the ages of sixteen and twenty-one years who is convicted in the superior court of an offense for which he may be punished by imprisonment for a shorter period than life . . . may be committed to the Connecticut Correctional Institution, Cheshire, if he appears to the trial court to be amenable to reformatory methods." The sentence may be for an indefinite term. The circuit court is authorized, under § 18–75, to "sentence any male person between the ages of sixteen and twenty-one years to the reformatory in any case where the maximum term of imprisonment for the offense committed does not exceed . . five years [in the State Prison]. Any person so sentenced shall be sentenced for an indefinite term. . . . ." Women convicted of those crimes listed in Conn. Gen.Stats. § 18–65 may be sentenced to Niantic for an indefinite term if the court finds that they "will be benefited physically, mentally or morally" by such commitment.
Conn.Gen.Stats. § 18–65.

2. Public Act 105, April 28, 1972. As to these inmates, originally encompassed in the complaint, all parties concede that the action is moot.

3. The state urges preliminarily that as plaintiffs are requesting relief which may lead to release, the action is really a habeas corpus proceeding rather than a Civil Rights Act action and ought to be dismissed for failure to exhaust state remedies. This contention is foreclosed by Rodriguez v. McGinnis, 456 F.2d 79 (2 Cir. 1972) (en banc), cert. granted, Oswald v. Rodriguez, 407 U.S. 919, 92 S.Ct. 2459, 32 L.Ed.2d 805 (June 19, 1972). See Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (Dec. 14, 1971); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968).

4. See In re C... H... (unreported decision, Juvenile Court, Sept. 16, 1971), quoted by plaintiffs, in which the court described Cheshire as a maximum security penal institution whose "physical plant imposes a deadening and delimiting hand on all rehabilitative efforts."

are treated identically to those on definite prison sentences. In both institutions the inmates in these classifications are freely mingled.

■ The operation of this state statutory scheme, which assigns two people, convicted of the same offense and sentenced to the same maximum term, to different treatment based solely on whether they receive a definite sentence (i. e., one with a minimum as well as a maximum term) or an indefinite one, must be scrutinized carefully when under attack as violative of the equal protection clause. In order to be upheld as valid the classification must serve compelling state interests, for it consigns those in plaintiffs' class to lengthier custody and supervision than those with definite sentences and thus impinges directly on personal liberty, one of the most fundamental rights of the individual. Weber v. Aetna Casualty and Surety, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed. 2d 768 (April 24, 1972); see Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); United States ex rel. Robinson v. York, 281 F.Supp. 8 (D.Conn. 1968). Cf. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The state must show that the classification is "necessary to the accomplishment of some permissible state objective." Loving v. Commonwealth of Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967).

■ The original omission from the good time statute of those sentenced to indefinite terms because they were "amenable to reform" may have been based on the hope that they would receive different and rehabilitative treatment such that the desire to mitigate the harshness of imprisonment and the need to induce obedience through the use of good time would be unnecessary. However, the current situation belies any such hopes, and the state does not contend that incarceration in Cheshire or Niantic on an indefinite sentence is not penal or differs at all from a definite prison sentence being served in one of those institutions. Since, therefore, the state has made no distinction in conditions of confinement based on the nature of an inmate's sentence, there is no basis in fact, much less a compelling state interest grounded in different treatment methods, behind the challenged discrepancy in good time. See People ex rel. Foley v. Dros, 24 Misc.2d 44, 202 N.Y.S.2d 741 (Sup.Ct.1960).[5]

■ One form of compensation for lack of good time, which the state claims warrants the denial of that benefit to plaintiffs and their class, is the flexible and careful consideration given those on indefinite sentences by the Parole Board. It is allegedly state policy to parole these individuals as early as possi-

---

5. We note that the groups whose members can be given indefinite sentences are distinguished from others convicted of crime by their age (males sixteen to twenty-one years old) and their sex (all women). Although we need not decide now whether it is permissible to single out members of these groups for "reformatory" treatment, and, if they in fact received different treatment from other inmates, whether the denial of good time would be reasonably related or supported by a compelling state interest deriving from their particular mode of incarceration, we note that paternalistic or "protective" classifications by sex and age have come under increasing scrutiny, particularly in the criminal law context. See United States ex rel. Robinson v. York, 281 F.Supp. 8 (D.Conn.1968); Commonwealth v. Daniel, 430 Pa. 642, 243 A.2d 400 (1968); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). See generally, Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 95 Cal. Rptr. 329, 485 P.2d 529 (1971); Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

ble, and the state claims that no one but "chronic parole violators" is confined until the date at which good time would operate to effect his release. This argument misses the point. The permissive exercise of broad discretionary power such as is granted the Parole Board is not equivalent to the automatic operation of the statute granting good time to all who obey the rules, for good behavior alone cannot assure a grant of parole and release under supervision is not equivalent to release at the end of one's sentence. The award of good time, as a backstop for those overlooked or disfavored by the Parole Board, will not preclude the continued use of a flexible parole policy for those on indefinite commitments. It will, however, remove the constitutionally offensive discrimination between those serving the same maximum term in the same institution under the same conditions. *See*, on the inadequacies of "benevolent" discretion as a substitute for clearly defined rights, In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

■ Therefore, we find the Connecticut statutory system governing good time in correctional institutions unconstitutional as applied to prevent inmates on indefinite sentences from earning such commutation. The defendants are enjoined from continuing so to discriminate and are ordered, within thirty (30) days or such additional time as the court may allow for good cause shown, to promulgate regulations applying the prison good time statute, Conn.Gen.Stats. § 18–7, to plaintiffs and their class, that is, inmates sentenced to Cheshire on reformatory terms under Conn.Gen.Stats. § 18–73 or § 18–75 or to Niantic under § 18–65. The maximum term of the sentence may be used as the period from which the good time will be deducted. This ruling will have prospective force only.

The above constitute the findings of fact and conclusions of law of the court, pursuant to Fed.R.Civ.P. 52(a).

So ordered.