Opinion of the court delivered bj
Judge Catron.
On the 23d of April, 1824, Betsey Hinton, a single woman, being with child, on her examination on oath by two justices of the peace for the county of Knox, charged William Goddard with being the father; upon which, process issued to bring him before the county court of Knox, to answer the said charge. Upon this process Goddard was brought into court at its October sessions, 1824; and at the said term made affidavit, thus: “ State vs. Wm. Goddard. In this cause the defendant maketh oath, that he hath been accused and charged by Betsey Hinton, to be the father of an illegitimate child begotten on her body, and that he, affiant, states he is not the father of said child, and requires that justice may be done him by having the fact tried by a jury of his country. William Goddard. Sworn to in open court, 7th October, 1824. Wm. Swann, D. C.”
The record then states, that afterwards, at the same term, came the Attorney General for the State, and (he *97 defendant, and the issue made in this cause being tried by the court: therefore it is adjudged by the court, that the said William Goddard be the reputed father of the said Betsey Hinton’s illegitimate child, and that he stand charged with the maintenance of said child as this court may order, &c. &c.: to which the defendant by his counsel excepts, and tenders his bill of exceptions, &c. The bill of exceptions is in the following words: “ October sessions, 1824 — Be it remembered, that this day, being the fourth day of the term, William Goddard, who had been brought into court on a charge of having begot a bastard child on the body of Betsey Hinton, after making affidavit that he was not the father of said illegitimate child, which is prayed to be made a part of the record, moved the court to have the issue tried by a jury, whether the said Goddard was the father of the said illegitimate child, which the court refused: to which the defendant by his counsel excepts in law.”
The counsel for the State then proceeded, and read the warrant which authorized the apprehension of defendant, upon which he was bound to court; and the defendant refusing to produce any evidence in his behalf, without the introduction of any other proof upon- the motion of the counsel for the State to bind the defendant, the defendant was ordered tobe bound: to which the defendant by his counsel excepted. The defendant prayed an appeal in the nature of a writ of error to the circuit court, and having given.bond, &c. was granted, &c..
The circuit court of Knox county, at its January term 1825, affirmed the judgment of the county court. To which judgment of the circuit court, the defendant by his counsel excepted, and took an appeal in the nature of a writ of error to this court.
By the act of 1741, ch. 14, sec. 10, the person charged by the woman, before the justices, was tobe adjudged the reputed father; and nothing further was to be done when the proceedings were returned to the county court, but for the court to make the order for maintenance.
By the 10th section of the act of 1741, the charge of *98 the woman was conclusive evidence of the fact that the man charged was the father of the child.
Bj the act of 1822, ch. 29, the legislature provides, |llat the affidavit of the woman shall not be conclusive upon the county court, and the reputed father cut off from all enquiry in every possible case; but upon filing his affidavit, clearly setting forth that justice requires an issue to be made to try the truth oí the charge, it shall be the duty of the court where such charge is pending, to hear ■proof and determine the matter as to right and justice may appertain. Yet this statute confirms the act of 1741, by declaring the man charged to be the reputed father of the child. It never was contemplated by the act of 1741, that the woman should be examined in court; nor is the law altered in this respect by the act of 1822. Both decency and policy forbid that she should be brought into court, and compelled to expose her own shame, it requires little knowledge of the female character, to predict that such an open exposure of the frailty and vice of the woman, would tend to tearaway the film of modesty she had left, and turn her loose upon society profligate and shameless; whereas, everyday’s experience proves, that if women thus unfortunate are abstracted from exposure to the ridicule of society for a length of time, they recover in some degree their standing, and in very many instances their virtuous habits. Hardly any situation can be conceived, better calculated to drive into desperate and abandoned profligacy a woman who has already departed from the path of virtue, than an open examination before a court and large crowd, in which she is compelled to expose her own abandonment. Furthermore, she would have almost irresistible temptations to commit perjury, in answering many of the questions that would necessarily be propounded to her. The best evidence of a return to a virtuous course, is a denial of any departure therefrom, except in the single instance which nature has undeniably established. These are some of the reasons why the woman should never be brought into open court for a second examination.-
*99 By the act of 1822, as well as the act of 1741, the accused shall be adjudged the reputed father; and this is conclusive until the affidavit of the defendant is filed, shewing that justice requires he should be heard in de-fence. After the affidavit is filed, then the charge made before the Justices is taken as true, until the defendant shall by proof in opposition to such charge, convince the court that the saméis untrue; and in doing which he has no right to examine the woman, unless she voluntarily •comes forward to give evidence contradicting her former statement.
It is insisted that the plaintiff in error was entitled to a trial by jury upon an issue to be made up under the direction of the cóurt. The subject matter of such an issue would be indecent, and unfit to be placed on the records of a court of justice. The Legislature by the act of 1822, only intended to extend a single priviledge to defendants in such cases, and that was to permit the introduction of proof contradicting the charge made by the woman; and which contradictory evidence is to be heard and adjudged of by the court, before they make the order upon the man for the maintenance of the child. It is hardly possible to prove by any other than the woman, who is the father of the child; and therefore, from necessity, her evidence is conclusive, unless the accused proves a negative, which in some instances he may be enabled to do.
It is further contended, that the court cannot consistent with our constitution, (Declaration of Rights, sec. 8,) make ,an order on this man without the judgment of his peers.
Were this doctrine sound, the magistrates .had no power to issue the warrant arresting the defendant in this case; nor could they arrest the felon, and confine him for trial, because he would be deprived of his liberty; nor could a court of chancery give a decree for property both real and personal, for this is depriving a man of his property. The English Magna Charta has the same provision, from which the framers of our constitution borrowed it; the construction of which has been settled as early as the *100 time of Sir Edward Coke, who' in his reading upon this statute, tells us that the cases in which courts act without a trial by jury, or “peers,” are innumerable and undefined, being done “ by the lam of the land” The defendant, there-fore, having been treated by the county and circuit courts with every indulgence to which by law he is entitled, must abide by the order of maintenance made in the county court, which judgment is affirmed by this court.
Peck and Haywood concurred.