**TENNESSEE DEPARTMENT OF
HUMAN SERVICES, etc.,
Plaintiff-Petitioner,**

v.

**Major VAUGHN, Defendant-Respondent.**

Supreme Court of Tennessee.

Feb. 11, 1980.

Petition to Rehear Denied March 10, 1980.

Harold W. Horne, Memphis, for plaintiff-petitioner.

J. Michael Fletcher, Memphis, for defendant-respondent.

## OPINION

HENRY, Justice.

We granted certiorari in this case to examine the constitutionality of so much of Section 36–227(1), T.C.A., as provides that in a bastardy case an "alleged father shall not be compelled to give evidence." We hold it to be unconstitutional.

### I.

Tennessee Department of Human Services, as assignee of Donna Rogers, filed its petition in the Juvenile Court at Memphis seeking a determination that respondent was the father of a child born out of wedlock, with the usual and appropriate award for support and maintenance. Pursuant to Section 36–227(1), T.C.A., the case was transferred to the Circuit Court for jury trial "on the issue of paternity."[1]

After the transfer counsel for the petitioner propounded a series of interrogatories to defendant who refused to respond, taking the position that under Section 36–227(1), T.C.A., he was privileged against being required to "give evidence," by interrogatories or otherwise. The trial judge held against the exemption but granted an interlocutory appeal pursuant to Section

---

1. Upon transfer, the Circuit Court is empowered not only to try the issue of paternity, but to "make an order of paternity and support" as set out in Section 36–229, T.C.A. This latter section governs the support and maintenance of children born out of wedlock.

27–305, T.C.A., and certified to the Court of Appeals the following question:

> Does "evidence" as used in Tennessee Code Annotated, Section 36–227(1) afford the Defendant in a bastardy proceeding a privilege to refuse to answer interrogatories propounded by the Plaintiff?

While not stated with admirable articulation, the constitutional issue fairly inheres in the certified question. One need not play fast and loose with the English language to respond to a question as to whether a given Code section affords a privilege, by saying that it cannot do so because such would be unconstitutional. Indeed, this is a basic, primary and direct response.

■ Moreover, Section 27–305, T.C.A.,[2] should not be construed in such a way as to defeat substantial justice, result in a duplication of appeals, nor to evade a response to an issue of critical public importance which continues to recur but evades review.

The New Rules of Appellate Procedure speak to these considerations. Rule 13(b), which applies to *all* appeals to this Court, provides that "[r]eview *generally* will extend only to those issues presented for review." (Emphasis supplied). But, the rule goes farther and makes it mandatory for the Court to consider the question of subject matter jurisdiction, "whether or not presented for review," and authorizes the Court, in its discretion, to consider other issues in order "(1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process."

These three reasons cry out for an adjudication on the constitutional issue in this case. Both pragmatism and principle are involved. We meet and decide the issue.

## II.

The Court of Appeals reversed, holding that the defendant in a bastardy case had, and could rely on, the statutory privilege.

■ We respectfully differ with the Court of Appeals, and, while an extended discussion of the matter is not appropriate, we reject out of hand its conclusion that the "Tennessee Rules of Civil Procedure are not laws." These rules, along with the Rules of Criminal Procedure and the Rules of Appellate Procedure, are "laws" of this state, in full force and effect, until such time as they are superseded by legislative enactment or inconsistent rules promulgated by this Court and adopted by the General Assembly. Any other construction would thwart, frustrate and emasculate these modern and progressive rules designed "to secure the just, speedy and inexpensive determination" of civil actions (Rule 1, Tenn.R.Civ.P.), the "just determination of every criminal proceeding" (Rule 2, Tenn.R.Crim.P.) and the "just, speedy and inexpensive determination of every proceeding on its merits" (Rule 1, Tenn.R.App.P.).

It ill behooves any court—particularly an appellate court—to denigrate this trilogy of Rules galvanized into law by joint judicial and legislative action and marking the methodology of trial and appellate practice under modern and enlightened Tennessee jurisprudence. The Legislature rejected the argument that rules governing trial and appellate procedure could not be adopted pursuant to the statutorily prescribed procedure and so do we. We would suggest that it is a foremost mission of the Bench and Bar of this state to unite in an effort to keep our rules current, to continually seek their improvement and to accord to them the respect that two branches of the government intended that they have.

## III.

Section 36–227(1), T.C.A., governs the conduct of the trial both in the juvenile and circuit courts. It provides, in part, that

> [b]oth the mother and the alleged father shall be competent to testify but *the alleged father shall not be compelled to give evidence.* (Emphasis supplied).

We declined in *Patrick v. Dickson,* 526 S.W.2d 449 (Tenn.1975), to extend the Rules of Civil Procedure "to paternity cases in the

---

2. Superseded by Rule 9(a), Tenn.R.App.P.

*juvenile courts,*" and noted that such cases are "quasi-criminal in character." 526 S.W.2d at 450–51. Subsequently, we held in *Wilkerson v. Benson,* 542 S.W.2d 811 (Tenn.1976):

> It is not made a criminal offense in Tennessee for one to father an illegitimate child. Our bastardy statutes (§§ 36–222, et seq., T.C.A.) are civil in nature and are intended to provide for the support, maintenance, education and funeral expenses of the child, and for the expenses of the mother's confinement and recovery, along with those incurred in connection with her pregnancy. 542 S.W.2d at 813.

The conflict, if any, between these two cases is more apparent than real.

"Quasi-criminal" actions are governed by the rules of pleading relating to civil actions. *O'Dell v. City of Knoxville,* 214 Tenn. 237, 379 S.W.2d 756 (1964). In *Frazier v. McFerren,* 55 Tenn.App. 431, 402 S.W.2d 467 (1964), the Court, on an appeal from a juvenile court, held that a bastardy hearing was a civil suit and the preponderance of the evidence standard prevailed.

▇ Under Section 36–227, T.C.A., paternity actions are certified to the circuit court whenever a jury trial is demanded. It may not be transferred to the criminal court. Circuit courts are governed by the Rules of Civil Procedure. These rules apply to bastardy cases transferred from the juvenile court.

We are not asked to determine the scope of the rules relating to interrogatories. Our consideration is limited to the constitutionality of the privilege statutorily afforded to the putative father against being required to "give evidence." This phrase includes testimony in open court, and by deposition or interrogatories.

The practical result of the privilege afforded to the putative father is that, in circuit court, he may depose the mother and demand that she respond, but when she attempts to pursue a similar practice she runs squarely into the stone wall of a statutory exemption. The parties do not deal at arm's length. The one enjoys an advantage, the other suffers a detriment. This different treatment of litigants does not comport with "the law of the land."

Justice and the judicial process both suffer if an unwed mother is frustrated in her effort to obtain a full and fair hearing, with the putative father being exempted from the very rules she must abide. Public interest is heavily involved. This is far more than just a suit between these particular parties involving private rights only. The public policy of the State is involved in any bastardy hearing. Sometimes issues of such overriding importance arise that the courts are under a duty to speak. This is such a case.

We would abide the "grace and discretion" referred to by this Court in *Norton v. Standard Coosa-Thatcher Co.,* 203 Tenn. 649, 658, 315 S.W.2d 245, 249 (1958), for here, as there, "an injustice would be done by enforcing the Rule."

What is the injustice?

It shocks and affronts justice to say, in effect, that in a bastardy hearing an unwed mother may be required to respond to interrogatories or to give a deposition covering her whole conduct but that the other party to the "tango" may seal his lips and silently lurk in the protective shadow of the law.

Article XI, Section 8 of the Constitution of Tennessee withholds from the Legislature the power "to suspend any general law for the benefit of any particular individual" or "to pass any law for the benefit of individuals inconsistent with the general laws of the land" or "to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law."

This section is closely akin to the "law of the land" proviso. It demands that all persons—in this case litigants—who are similarly situated or circumstanced, be governed by the same rule of law. The law must embrace and affect alike all persons

similarly situated and must make no arbitrary or capricious classification.

We regard the exemption provided in favor of men in Section 36–227(1), T.C.A., as being a blatant declaration of male supremacy, male chauvinism at its very worst, and a throwback to the days when laws were made by men and for men. Such laws must perish. We live in a new day.

We adopt the language of the concurring opinion in *Robinson v. Trousdale County,* 516 S.W.2d 626 (Tenn.1974):

My research indicates that the first decision of the Supreme Court of the United States to invalidate a sex discriminatory law was *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). In that case the Court held that a mandatory provision of the Idaho Probate Code giving preference to men over women in the appointment of the administrators of decedent estates is violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

Subsequently in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) the Court held that denial to unwed fathers of a hearing on fitness accorded to other parents whose custody of their children is challenged by the State constitutes a denial of the equal protection of the law.

In *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), the Court held that a statutory distinction in benefits payable to male and female members of the Air Force for their respective spouses, constitutes an unconstitutional discrimination against servicewomen and therefore violates the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

In *Wiesenfeld v. Secretary of Health, Education and Welfare,* 367 F.Supp. 981 (D.C.N.J.1973), the Court held that a provision of the Social Security Act [402(g)] authorizing payment of insured benefits to widows and divorced mothers but not widowers is unconstitutional as violating equal protection under the Fifth Amendment.

A footnote to an article entitled "Are Sex-based Classifications Constitutionally Suspect?", appearing in Northwestern University Law Review, Vol. 66, No. 4 (1971–1972) contains a "mini" brief on sex as a classification. It reads as follows:

"See, e. g., *Cohen v. Chesterfield County School Bd.,* 326 F.Supp. 1159 (E.D. Va.1971) (mandatory maternity leave at five months pregnancy denied equal protection); *Kirstein v. Rector & Visitors of the Univ. of Virginia,* 309 F.Supp. 184 (E.D.Va.1970) (state university must admit women); *United States ex rel. Robinson v. York,* 281 F.Supp. 8 (D.Conn.1968) (statute providing for longer sentences for women than for men convicted of the same offense held a denial of equal protection); *Karczewski v. Baltimore & O.R.R.,* 274 F.Supp. 169 (N.D.Ill.1967) (Indiana law allowing husband, but not wife, to sue for loss of consortium, denied wife equal protection); *White v. Crook,* 251 F.Supp. 401 (N.D.Ala.1966) (Statute barring women completely from jury service violated the equal protection clause); *Sail'er Inn, Inc. v. Kirby,* 5 Cal.3d 1, 485 P.2d 529, 95 Cal.Rptr. 329 (1971) (statute forbidding women to work as bartenders violated the 1964 Civil Rights Act, California constitution, and the fourteenth amendment); *Commonwealth v. Daniel,* 430 Pa. 642, 243 A.2d 400 (1968) (statute providing for longer sentences for women than for men convicted of the same offense held invalid); *State v. Crow Wing County Welfare Bd.,* 3 EPD ¶ 5162 (Minn. Human Rights Comm'n 1971) (refusal to grant social worker two months maternity leave violated Minnesota law and the fourteenth amendment). *See also Paterson Tavern & G.O.A. v. Borough of Hawthorne,* 57 N.J. 180, 270 A.2d 628 (1970) (city ordinance prohibiting employment of female bartenders was an unreasonable exercise of the police power)."

Numerous cases from other jurisdictions support the proposition that where the husband has a right of action for consortium and that right is denied the wife, the classification violates the Equal Protection Clause of the Fourteenth Amendment. 516 S.W.2d at 633–34.

Since the decision in *Robinson*, the Supreme Court has handed down at least three (3) pertinent and persuasive opinions.

The first of these was *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975). There the Court was dealing with support obligations of a father following a divorce, in the context of a Utah law providing that males reached their majority at age 21, women at 18. The Court applied the rule of *Reed, supra*, that a classification based on sex was subject to scrutiny under the Equal Protection Clause. The Court held that a classification must be reasonable as opposed to arbitrary and must rest upon some ground of difference having a "fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." 421 U.S. at 14, 95 S.Ct. at 1377, 43 L.Ed.2d at 694.

This is the "rational basis" test that we have applied in Tennessee. *See Harrison v. Schrader*, 569 S.W.2d 822 (Tenn.1978), and cases cited therein. *See also, City of Memphis v. International Brotherhood of Electrical Workers Union, Local 1288*, 545 S.W.2d 98 (Tenn.1976).

In the landmark case of *Motlow v. State*, 125 Tenn. 547, 145 S.W. 177 (1911), this Court, speaking through Justice M. M. Neil, stated the rule of rationality and reasonableness, as it existed then, and as it exists today, in the interpretation of Article I, Section 8, and Article XI, Section 8 of the Constitution of Tennessee:

> These provisions forbid that any mere individual shall be singled out for legislative action, but do not deny the right to the lawmaking power to make proper classifications for purposes of legislation. Such classification, however, must rest upon some *natural or reasonable basis*, having some substantial relation to the public welfare, and the same provisions must approximately *apply in the same way to all of the members of the class.* (Emphasis supplied). 125 Tenn. at 590, 145 S.W. at 189.

It is not sufficient to say in the instant case that this classification applies to all alleged fathers of illegitimate children who face bastardy charges. This is the fallacy of our statute; it makes classes of *men and women*, or *fathers and mothers*, whereas in reality they are all members of a class of *parents*. The female members must testify, if called; the male members are exempted from the requirement.

The Supreme Court of the United States, in 1976, decided the case of *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Prior to that time, it had created a two-tier standard for the evaluation of classifications by state legislatures, *see City of Memphis, supra*, subjecting them to strict scrutiny only when there was an impermissible interference with fundamental rights and subjecting all others to the rational basis test. *See Harrison v. Schrader, supra*. Gender-based classifications had not been placed in either category.

In *Craig v. Boren, supra*, the Court dealt with a statute prohibiting the sale of beer to males under 21 and females under 18. Classifying the statute as an "invidious gender-based discrimination" against males 18 to 20 years of age, the Court established yet a third or intermediate level of scrutiny for gender-based classifications.[3] In order to pass muster under the Equal Protection Clause of the Fourteenth Amendment, the Court said the "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." 429 U.S. at 197, 97 S.Ct. at 457, 50 L.Ed.2d at 407.

Finally, in *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), the Court held invalid, on Equal Protection grounds,

---

3. *See* Wilkinson, "The Supreme Court, the Equal Protection Clause, and the Three Faces of Constitutional Equality," 61 Va.L.Rev. 945 (1975).

an Alabama statute requiring husbands but not wives to pay alimony. The Court held the statutory scheme was subject to scrutiny under the Equal Protection Clause and reemphasized that such "classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives." 440 U.S. at 279, 99 S.Ct. at 1111, 59 L.Ed.2d at 319.

With this background of state and federal cases we look to the appellee's argument. He says that "the consequences of determination of paternity are far reaching." So they are. Being stigmatized by society with the scarlet letter of the fornicator and branded as the bearer of a bastard child is also quite far reaching. He says there is "the potential for false claims." So there is, but there is also the potential, under the statute, for enabling a putative father to preclude a just claim.

No governmental interest is served by this exemption—only the interest of the man who impregnated a woman. The public policy of this State is reflected in our bastardy laws. They are designed to require that the father provide for the support and education of the child, its funeral expenses, the expenses of the mother's confinement and recovery. Section 36–227(1) emasculates that policy. It is the policy of our law to provide for unwed mothers and absent the father's contribution, this falls upon the State. This exemption defeats our stated governmental objections and flies in the face of our declared humane public policy.

■ We hold that Section 36–227(1), T.C.A., violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States; that it violates the Law of the Land provision of Article I, Section 8 of the Constitution of Tennessee and the privileges, immunities and exemptions section of Article XI, Section 8 of the Constitution of Tennessee.

Reversed and remanded.

FONES, J., concurs.

BROCK, C. J., concurs by separate opinion.

HARBISON and COOPER, JJ., dissent.

BROCK, Chief Justice, concurring.

I concur in the result reached in the opinion of Mr. Justice Henry but upon somewhat different grounds which I shall briefly outline.

First, in my view, the statute, T.C.A., § 36–227(1), if valid, affords the defendant in a bastardy proceeding a privilege to refuse to answer interrogatories as well as to refuse to give trial testimony.

But, my judgment is that the statute offends due process and equal protection guaranties of the federal and state constitutions. See, Fourteenth Amendment to Constitution of the United States, Art. I, Sec. 8, and Art. XI, Sec. 8, Constitution of Tennessee.

Procedural due process is denied to the plaintiff in that she is deprived of the evidence of an important witness without justification. Obviously the testimony of the alleged father could be vital to the plaintiff's cause in many cases. On the other hand no sufficient cause appears for granting the privilege to the defendant. No longer is self-incrimination a risk. *Wilkerson v. Benson*, Tenn. 542 S.W.2d 811 (1976); *see also*, Wigmore, 7 *Evidence*, § 2255 (1978). In short, the state has no vital interest to protect by granting the privilege; it is nothing more than a legal anachronism.

This statute also denies equal protection to the plaintiff; the defendant may require her to answer his questions regarding paternity of her child but she may not require him to answer her questions upon the same subject. This is not "gender discrimination," but, it is "litigant discrimination" and, as above pointed out, is not justified by any apparent state interest. In fact, the interest of the state is to ascertain and establish by judicial proceedings the truth regarding the paternity of the child of the unwed mother.

For these reasons I concur in the decision of the Court.

HARBISON, Justice, dissenting.

I respectfully dissent. I do not think that the constitutional issue is properly before the Court in the first place, but if it is, then I think that it has been dealt with by the majority without proper analysis and upon unsound constitutional principles. My joining in the grant of certiorari was for wholly different reasons. I felt that important issues of procedure and practice were presented which had been dealt with insufficiently by the courts below.

## I.

This case involves an interlocutory appeal pursuant to T.C.A. § 27–305. The single question certified by the trial court for review is:

"Does 'evidence' as used in Tennessee Code Annotated, Section 36–227(1) afford the Defendant in a bastardy proceeding a privilege to refuse to answer interrogatories propounded by the Plaintiff?"

The trial court held that any privilege accorded to the defendant in such a proceeding did not extend to pre-trial discovery procedures, particularly the answering of interrogatories under Rule 33, T.R.C.P. He reserved ruling as to whether the answers to such interrogatories could be used as evidence at trial on the merits.

The Court of Appeals reversed, holding that the privilege extended to pre-trial interrogatories. It found a conflict to exist between Rule 33 and the provisions of the statute. In my opinion, however, when the Rules of Civil Procedure are examined, there is no conflict as found by the Court of Appeals. By their very terms, the Rules do not permit discovery of matters which are otherwise privileged.

The case originated in the Juvenile Court of Shelby County, Tennessee, when appellant, as assignee of Donna Rogers, instituted a proceeding seeking to have appellee declared to be the father of a child born out of wedlock and to require that he provide proper support and maintenance therefor. Upon motion of appellee, the cause was transferred to the circuit court pursuant to the provisions of T.C.A. § 36–227(1).

The statute provides that upon demand by a defendant the cause shall be transferred to the circuit court for jury trial "on the issue of paternity."

This procedure was followed in the present case, but after the cause had reached the circuit court, counsel for appellant propounded thirty-four interrogatories to appellee, embracing many issues other than that of paternity. These included the financial status of appellee and his relations with women other than the alleged mother of the child.

Since the only issue then triable before the circuit court was that of paternity, interrogatories on other issues were irrelevant. If the issue of paternity should be resolved against appellee, there are statutory provisions for the taking of proof without a jury regarding the finances of the father and for a suitable order of paternity, support and education. See T.C.A. §§ 36–227(3), –299 et seq.

Accordingly, the only interrogatories which were pertinent to the issue than pending for trial in the circuit court were those dealing with the issue of paternity. As to these, the defendant invoked the statutory privilege contained in T.C.A. § 36–227(1) as follows:

"Both the mother and the alleged father shall be competent to testify but the alleged father shall not be compelled to give evidence."

The trial court held that the privilege pertained only to the trial of the case and not to pre-trial interrogatories. The Court of Appeals held otherwise, finding no substantial basis for making a distinction between the term "evidence" in general and that of trial "testimony" in particular. It traced in some detail the antecedents of the present statutes dealing with paternity and concluded that the privilege accorded to a defendant in such cases extended to pre-trial discovery.

As stated previously, the Court of Appeals concluded that there was a discrepancy or conflict between the statute and the

Rules of Civil Procedure. In my opinion no such conflict exists. Rule 33, under which the interrogatories in the present case were propounded, provides:

"Interrogatories may relate to any matters which can be inquired into under Rule 26 and the answers may be used to the same extent as provided in Rule 26 for the use of the deposition of a party."

At all times pertinent to this case, Rule 26.02 provided:

"Unless otherwise ordered by the court as provided in Rule 30, the deponent may be examined regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action . . . ." (Emphasis added).

It is therefore apparent that if an evidentiary privilege is accorded to a party or witness by statute, the constitution, or the common law, matters which are privileged may not be inquired into under Rules 26 and 33.

The Court of Appeals correctly concluded that the Rules of Civil Procedure are applicable, insofar as pertinent, to cases which have been transferred to the circuit court for trial. *See* Rule 1, T.R.C.P. They do not operate, however, to abrogate evidentiary privileges, nor were they so intended.

Both in the Court of Appeals and in this Court the parties have discussed a number of issues other than the single question certified by the trial court under T.C.A. § 27–305. This Court has undertaken to make clear, for obvious reasons, that it will not permit departure on appeal from specific issues certified for interlocutory review. *Tennessee Department of Mental Health & Mental Retardation v. Hughes,* 531 S.W.2d 299 (Tenn.1975).

It is my opinion that T.C.A. § 36–227(1) does accord to a putative father a privilege in cases brought pursuant to Chapter 2, Title 36. In the case of *Wilkerson v. Benson,* 542 S.W.2d 811 (Tenn.1976), the Court referred to it as an "exemption." In that case the Court did not reach the question certified here. The holding was confined to a decision that a putative father does not have a *constitutional* privilege from testify-

ing by virtue of the Fifth Amendment to the United States Constitution (protecting against self-incrimination).

It is true that in the case of *Patrick v. Dickson,* 526 S.W.2d 449, 451 (Tenn.1975), the Court, referring to paternity cases, said:

"As a minimum, they are quasi-criminal in character."

For that and other reasons, it was determined that the Rules of Civil Procedure were not compatible with proceedings conducted in a juvenile court. It is also true that in earlier cases, the Court had referred to bastardy suits as being offenses against the state. *See Crawford v. State,* 66 Tenn. 41 (1872).

Nevertheless, in the later case of *Wilkerson v. Benson,* 542 S.W.2d 811, 813 (Tenn. 1976), the Court noted that it is not now a criminal offense in Tennessee for one to father an illegitimate child. The paternity statutes were held to be basically civil in nature, designed to provide for support, education and maintenance of the child and recoupment of expenses incurred by the mother. Likewise, in earlier cases, the Court had recognized that such actions are not exclusively criminal but have aspects which are both civil and criminal. *See Blankenship v. State,* 63 Tenn. 383 (1874).

As pointed out by the Court of Appeals, at one time in proceedings such as this neither party was permitted to give oral testimony, and an affidavit of the mother was conclusive evidence of paternity by the man charged. *See Goddard v. State,* 10 Tenn. 96 (1825). Under statutes enacted in 1822, the affidavit of the mother was no longer conclusive, and the alleged father was given the right to file countervailing affidavits and to adduce proof, although he was not required to do so.

The present statutes provide that both the mother and the alleged father are competent to give evidence, but they accord a privilege from doing so to the father. In my opinion, this privilege would be undermined if the father were required to respond to pre-trial interrogatories. Such interrogatories, pursuant to Rule 33 T.R.C.P.,

once answered, may be used at trial for any purpose for which the pre-trial deposition of a party could be used.[1] As previously stated, Rule 33 does not contemplate that a party be required to respond to matters which are privileged, even though they might otherwise be relevant and pertinent.

Insofar as I am aware, this is the general rule. No authority has been cited for the decision of the trial judge that a party having a privilege from testifying may nevertheless be subjected to pre-trial discovery concerning the matter privileged. As stated in 23 Am. Jr. 2d, *Depositions and Discovery* § 169 (1965):

"The rules of evidence which would govern privileged matters at trial govern such matters when they arise during discovery, and wherever a claim of privilege would be proper at the actual trial of the case, it is proper at the discovery stage. Thus, a party may not be compelled to make disclosure of privileged or confidential communications concerning which he cannot be compelled to testify in court. This is expressly recognized in the Federal Rules of Civil Procedure and state counterparts thereto, which provide for discovery regarding any matter 'not privileged' which is relevant to the subject matter involved in the pending action."

## II.

It is my opinion that the Court of Appeals correctly answered the single question which was certified to it and that its judgment should be affirmed. Since the majority, however, have concluded that it is appropriate to deal with a constitutional issue not decided by the trial court or certified here, I respectfully dissent from its holding that the statute in question is invalid.

The primary contention of the petitioner throughout the litigation has been that the statute as written applies only to trial proceedings and not to pre-trial discovery. This was the only question presented to the Court of Appeals. Indeed, in that court, appellant asserted the constitutionality of the statute as construed by the trial judge.

After the Court of Appeals held that the statutory privilege accorded to an accused defendant in proceedings such as this extended to pre-trial interrogatories, appellant, for the first time in this Court, asserted that if the statute were so construed, it would be unconstitutional, as constituting invidious discrimination based upon gender and therefore violative of the equal protection clause of the Fourteenth Amendment.

In my opinion, this argument is untenable. If the statutes in question created rights of action against both men and women and accorded a privilege only to men, such a contention would be plausible. As drawn, however, the statutes pertain only to suits against men accused of being the fathers of illegitimate children. Regardless of the miracles of modern science, within the purview of the statutes under consideration paternity of an illegitimate child can only be accomplished by one of the male sex. The statutes do not purport to impose any liability upon females.

Implicitly, the majority opinion holds that a party to a civil action has a *constitutional right* to the testimony of the other party. This, in my opinion, is both a novel and an unsound proposition.

At common law, as a general rule neither party to a civil action was even permitted to testify. The common-law disability came into the law of this state when the first constitution was adopted in 1796. That same constitution contained a "law of the land," or due process, clause, and there is no suggestion in any of the cases cited by the majority or in any other cases of which I am cognizant that there was any conflict between the due process clause and the disability of parties to testify in civil actions. Certainly there was never any hint that the due process clause required that one party make his testimony available to the other party.

---

1. Under former Rule 26.04(2) (now Rule 32.01(2)), at trial the deposition of a party "may be used by an adverse party for any purpose."

This disability, except as modified by statute in particular cases (see § I, *supra*, with reference to bastardy proceedings), continued until 1868 when Tennessee adopted a statute making the rules of evidence in the state courts uniform with those in federal courts. This allowed parties to testify, but the General Assembly on several occasions in the late nineteenth century modified the original statute so as to grant privileges to spouses and to accord privileges to the executors or guardians of deceased or incompetent persons against the use of statements by or transactions with the deceased or incompetent, unless the privilege was waived by the holder thereof. *See generally* T.C.A. §§ 24–103 *et seq.*[2] As late as 1949 it was held in *Hubbard v. Haynes*, 189 Tenn. 335, 225 S.W.2d 252 (1949), that statutes authorizing the taking of depositions of witnesses prior to trial for use as evidence did not authorize the deposing of a party litigant.

The legislature has, of course, created a number of privileges against testifying and, on the other hand, in some instances has mandated that the testimony of witnesses be offered whether the parties desire to produce them or not. *See e. g.*, T.C.A. § 32–406 (dealing with will contests).

Both by the constitution and by statute, defendants in criminal cases are accorded a privilege from giving evidence against themselves. Paternity cases were once considered criminal offenses in this state, as previously pointed out. While they are no longer so, they are still considered to be "quasi-criminal" and have many attributes of criminal proceedings, including the arrest and incarceration of a putative father under certain circumstances. *See* T.C.A. §§ 36–224(5), 225, 231. Once a duty of support is established in such cases, criminal responsibility can flow from its breach. T.C.A. § 39–202. In at least one state, the court trying a bastardy suit must see that the accused has counsel. *Ill.Ann.Stat.* ch. 106¾, § 55 (Smith-Hurd Supp. 1979).

Even in the permissive society of today, such actions carry with them a stigma as well as financial liability. Both the constitution and statutes require that before an accused in a criminal case may be convicted, it must be upon competent evidence offered from sources other than the defendant, and he is given a privilege against incriminating himself.

The statutory provision involved here is part of a quasi-criminal, statutory cause of action. It accords a similar privilege to one accused of conduct which bears social stigma and disgrace or disrepute. For the Court to hold that the General Assembly is without power to confer upon a person accused of that conduct a privilege of not giving evidence against himself is, in my opinion, most extraordinary. That body created the right of action and expressed concern not only that illegitimate children be supported but that accused defendants not be made the victim of improper accusations. All that the General Assembly has done is to provide that the person making the charges prove them other than by testimony of the accused and to accord such accused a privilege against giving evidence if he so desires.

To hold that this offends due process or is in any way at odds with the social policy underlying the statutes, is, in my opinion, a non-sequitur. The majority states that the statutes

"are designed to require that *the father* provide for the support and education of the child, its funeral expenses, the expenses of the mother's confinement and recovery." (Emphasis added).

This is certainly true, but only after paternity has been established in accordance with the directives of the legislature. At the stage of the case which we are considering, the accused has denied guilt, and the cause has been transferred to the circuit

---

**2.** An unfortunate interpretation of these statutes occurred in the case of *Jackson v. Jackson*, 186 Tenn. 337, 210 S.W.2d 332 (1947), when the Court held that spouses could not give testimony against each other in divorce cases regarding acts of cruelty or other misconduct between them. This decision was rectified by statute. *See* 1949 Tenn. Pub. Acts, ch. 55. For commentary *see* 2 *Vand.L.Rev.* 130 (1948).

court for trial of the very issue of whether he is or is not the father. The majority convicts him without trial and deprives him of a privilege which the General Assembly has seen fit to accord as a matter of public policy.

The legislature has further provided that the trial court may exclude the general public from the courtroom where such proceedings are being held, again indicating its concern with improper publicity and with the stigma and disgrace that may be associated with charges against the accused. T.C.A. § 36–227. Once paternity has been established, of course, the statutes provide abundant remedies for the award of support to the child, reimbursement of expenses to the mother and discovery of financial resources of the father.

Statutory provisions on filiation vary among the different states. Tennessee, however, is not the only state according an evidentiary privilege to an accused in cases such as this. A similar New York statute provides:

"The mother or the respondent shall be competent to testify but the respondent shall not be compelled to testify." *N.Y. Fam. Ct. Act*, § 531 (1975); *see also* (Supp. 1979).

Cases construing the New York statute have held that the mother is subject to pre-trial examination without showing special circumstances, *see Maureen E. O'H. v. Nicholas C.*, 65 A.D.2d 491, 411 N.Y.S.2d 658 (1978), while at the same time holding that the statute creates a privilege which exempts the father not only from testifying at trial but from giving pre-trial discovery. *Doe v. Roe*, 40 Misc.2d 148, 242 N.Y.S.2d 742 (1963).

In the *Maureen E. O'H.* case, *supra*, the court said:

"Finally, we do not believe that the lack of reciprocity in discovery rights, arising out of the respondent's statutory privilege against being compelled to testify [citing statute] renders pretrial examination of the petitioner inappropriate." 411 N.Y.S.2d at 660.

The Tennessee statute is almost identical to that of New York. It reflects the same public policy and in my opinion should be construed the same way. Whether the privilege accorded to the accused defendant is of any real value to him or not, from a tactical standpoint, may be debatable. Its wisdom is not a matter for decision by this Court. In my opinion, however, that the General Assembly has the authority to create such a privilege and that it is reasonably related to the subject matter are clear, and there is neither invidious class discrimination nor any other constitutional infirmity which I can perceive.

I would affirm the judgment of the Court of Appeals although for reasons different from those expressed in its opinion.

COOPER, J., concurs in this opinion.

## OPINION ON PETITION TO REHEAR

HENRY, Justice.

The Petition to Rehear is respectfully denied.

All members adhere to their original views.