IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 9, 2011 Session

## JESSE R. MILTIER v. BANK OF AMERICA, N.A.

**Appeal from the Circuit Court for Carter County**
**No. C9814      Thomas J. Seeley, Jr., Judge**

_____

**No. E2010-00537-COA-R3-CV - Filed March 30, 2011**

_____

This is a tort action for wrongful foreclosure. Suit was filed by Jesse R. Miltier against his lender, Bank of America, N.A. ("BOA"). In his complaint, Miltier demanded $200,000 in compensatory damages and $10,000,000 in punitive damages. The jury awarded Miltier $750,000 compensatory damages itemized on the verdict form as $350,000 out of pocket money losses "related solely to foreclosure," $100,000 out of pocket losses "related solely to lawsuit," $150,000 emotional distress "related solely to foreclosure" and $150,000 emotional distress "related solely to lawsuit." The jury also awarded Miltier $300,000 in punitive damages. BOA filed post-judgment motions asking that the compensatory damages be remitted to eliminate "amounts related solely to the lawsuit" and amounts awarded in excess of the $200,000 demanded in the complaint. Miltier responded asserting that the issue of damages over $200,000 was tried by consent. The trial court entered an order reducing the award of compensatory damages to $200,000. Later, the court entered a final order approving the jury's award of punitive damages in the amount of $300,000. Miltier appeals challenging the reduction of the verdict. His issues include a challenge to the constitutionality of Tenn. R. Civ. P. 15.02 which forbids amendment of pleadings after verdict to increase the _ad damnum_ clause. The Attorney General has appeared on appeal to defend the constitutionality of Rule 15.02. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Jason L. Holly and Travis B. Holly, Elizabethton, Tennessee, for the appellant, Jesse R. Miltier (trial counsel and on the brief); Jesse R. Miltier, Grand Junction, Colorado, appellant,

pro se (oral argument)[1].

Lawrence W. Kelley, Atlanta, Georgia, for the appellee, Bank of America, N.A.

Robert E. Cooper, Jr., Attorney General and Reporter, and Steven A. Hart, Special Counsel, Nashville, Tennessee, for the appellee, State of Tennessee.

**OPINION**

I.

The focus of this trial was not on liability, but rather on damages. Although BOA stopped just short of admitting liability, it acknowledged in its opening statement to the jury that it made a "mistake" in allowing Miltier's home to be sold at foreclosure. In fact, the parties stipulated that a "settlement offer of $250,000 [was] made by [BOA] . . . and [that] the fact . . . it was rejected by the plaintiff is admissible." Both parties talked about that settlement offer throughout the trial. It was BOA's position that it made the offer early in the dispute in order to make Miltier more than whole and that many of the damages he claimed, especially with regard to emotional distress, came after the offer and should not be chargeable to BOA. During its closing argument, BOA stated:

> [BOA] wants you to compensate Mr. Miltier for the reasonable,
> fair damages that were caused by the event of the foreclosure.
> Now the Judge told you that we made a settlement offer of
> $250,000[ ] and you're not bound by that number. It could be
> higher. It could be lower. You have the job of deciding what it
> is. But we, obviously, [BOA] felt that was a fair amount and
> they offered it. Mr. Miltier said he wanted three million dollars
> . . . .

The parties further stipulated that the fair market value of the property at the time of the foreclosure sale was $159,900.

---

[1] At the beginning of the Court's March 9, 2011, morning docket, counsel for Mr. Miltier, in open court, advised the court that he had discharged them from further representation of him in this case. Mr. Miltier, also in open court, confirmed this information. He told the Court that he wished to personally argue his case. Based on this colloquy, the Court excused counsel and the case proceeded to oral argument with Mr. Miltier presenting his case pro se.

The proof is clear that Miltier fell behind in his mortgage payments on a home loan with BOA. It is also clear, however, that before foreclosure proceedings were commenced, Miltier arranged and confirmed a repayment plan with BOA. BOA's "left hand," the foreclosure department, did not know that its "right hand," the collections department, had agreed to a repayment plan. The repayment plan had been noted on a consolidated computer log that both departments could access. Despite Miltier's pleas to several persons at BOA that he had arranged a repayment plan, and the fact that he had made a reinstatement payment of $7,000, thus paying the note through August 2004, BOA sold Miltier's home to satisfy his note.

As previously noted, Miltier's complaint demands "compensatory damages not to exceed two hundred thousand dollars ($200,000.00), [and] punitive damages in the amount of ten million dollars ($10,000,000.00)." These monetary demands were never amended, nor was there at any time, either before or after the verdict, a motion to amend the amounts demanded in the complaint.

It became clear before trial that Miltier was attempting to prove and recover damages related to the litigation process, including out of pocket expenses and emotional distress. BOA requested an instruction that Miltier could not recover for emotional distress damages related solely to the lawsuit. Rather than give the requested instruction, the court advised the parties that (1) it would not ultimately award any damages related solely to the litigation and (2) it would submit the case to the jury on a verdict form that would allow the jury to determine these litigation-related damages. Neither party objected to the verdict form. However, Miltier continued to maintain that litigation-related damages could be recovered while BOA persisted in its position that such damages were not recoverable.

We have previously stated the various elements of the jury's award of compensatory damages. We now reproduce as Figure 1. that part of the verdict form relevant to this appeal, as completed by the jury:

-3-



Figure 1.

As previously noted, the jury also awarded $300,000 in punitive damages.

BOA filed post-trial motions asking for a judgment notwithstanding the verdict or, alternatively, for a new trial or for a remittitur of the verdict. As grounds for the latter, BOA asserted that the verdict

> (a) include[s] amounts related solely to the lawsuit that the Court has previously ruled that it would not approve; (b) exceed[s] the amount proved at trial and (c) exceed[s] the amount plead by the Plaintiff and therefore cannot be properly approved in a judgment.

With regard to point "(b)," BOA argued that by Miltier's own proof at trial his total out-of-

pocket losses were $183,402.61. The jury awarded a total of $450,000 out-of-pocket losses, $100,000 of which was related "solely" to the litigation. Miltier responded that the "emotional distress" damages were left to the determination of the jury and tried by consent, especially in light of the introduction of BOA's settlement offer and the discussion of it by the parties throughout the trial.

The trial court entered an "Order on Post-Trial Motions" as follows:

> 1. [BOA's] Motion to strike the amounts awarded by the jury related solely to the lawsuit and not from foreclosure is granted. Those amounts, $100,000 for out of pocket losses and $150,000 for pain, suffering, emotional distress and loss of enjoyment of life . . . are disapproved and are hereby stricken from the Final Judgment.
>
> 2. [BOA's] Motion to reduce the jury award of out of pocket loss related solely to foreclosure to the amount proven at trial is well taken and is granted. The court finds that the amount of out of pocket loss due solely to foreclosure proved by the Plaintiff at trial is $183,402.61 as reflected by the demonstrative exhibit utilized by counsel for the Plaintiff at trial. The award of any out of pocket damages in excess of the amount reflected in the demonstrative exhibit would not be based on evidence before the court and would be speculative and therefore are not allowable.
>
> 3. [BOA's] Motion to reduce the total compensatory damages to a maximum of $200,000.00 is granted. The ad damnum provision of Plaintiff's complaint sought compensatory damages of $200,000.00. In accordance with Tenn. R. Civ. P. 15.02, the Plaintiff is limited to total compensatory damages of $200,000.00 as plead.
>
> *   *   *
>
> The Final Judgment is hereby altered and/or amended to strike all compensatory damages except for $183,402.61 as out-of-pocket money loss, including reasonable and necessary medical bills related solely to the foreclosure, and $16,597.39 for emotional distress related solely to the foreclosure. . . . .

-5-

BOA did not seriously dispute at trial that Miltier suffered emotional distress. In fact, BOA presented expert medical testimony aimed at differentiating between the emotional distress caused by the foreclosure and the emotional distress caused by the litigation. BOA's expert agreed that Miltier suffered chronic stress from the foreclosure and the "litigation stress . . . has been incredibly intense on Mr. Miltier." He also agreed that "there's . . . a relationship between these two," *i.e.*, the stress from the foreclosure and the stress from the litigation. He characterized the foreclosure as a "ball" and the "litigation process [as] the momentum [,*i.e.*,] the force that is pushing the ball." If the litigation had been made to go away through BOA's settlement offer, the "ball would just have disappeared."

As correctly noted by the trial court, Miltier summarized his out-of-pocket expenses in a demonstrative exhibit used during closing arguments, which exhibit reflected total losses of $183,402.61. The exhibit simply summarizes the proof.

The "Final Judgment" became final for purposes of this appeal when the trial court entered an order disposing of a motion to strike the award of punitive damages. That order sustained the punitive damages award of $300,000 , thereby making Miltier's total award $500,000, plus discretionary costs and post-judgment interest. Miltier filed a timely notice of appeal.

II.

The issues Miltier purports to raise on appeal are:

> Whether the trial court erred by denying any and all emotional distress and/or compensatory damages related solely to the lawsuit when [BOA] did little, if anything, to alleviate the need to file this lawsuit after admitting its mistake, and being provided with an opportunity to purchase the home at issue.

> Whether the trial court properly reduced the jury's award of compensatory damages to the amount plead in the *ad damnum* of the Complaint.

> Whether the application of [Tenn. R. Civ. P.] 15.02 to the jury's award of compensatory damages violates Mr. Miller's due process rights under Tenn. Const. Art. I, § 8.

BOA and the Attorney General both assert that any issue as to the constitutionality of Tenn. R. Civ. P. 15.02 was waived by the failure of Miltier to raise the issue in the trial court.

III.

These are all questions of law, and as such are reviewed *de novo* with no presumption of correctness attaching to the trial court's judgment. *See* ***Rutherford County v. Wilson***, 121 S.W.3d 591, 595 (Tenn. 2003). The constitutionality of a rule or statute is a question of law. *See* ***Bredesen v. Tennessee Judicial Selection Comm'n***, 214 S.W.3d 419, 424 (Tenn. 2007). The application of Tenn. R. Civ. P. 15.02 to a post-judgment motion to amend the *ad damnum* clause is also a matter of law. *See* ***Benson v. Tennessee Valley Elec. Co-op***, 868 S.W.2d 630, 644 (Tenn. Ct. App. 1993).

IV.

We begin with BOA's and the Attorney General's suggestion that any issue as to the constitutionality of Tenn. R. Civ. P. 15.02 was waived because it is raised for the first time on appeal. We agree. Our review of the record confirms that Miltier neither provided the required notice to the Attorney General[2] that he was challenging the constitutionality of the rule nor made any argument to the trial court, even in the Attorney General's absence, that Rule 15.02 was somehow unconstitutional. The Supreme Court held in ***Lawrence v. Stanford***, 655 S.W.2d 927, 929 (Tenn. 1983) that the Court of Appeals had "improperly adjudicated the . . . constitutionality of a statute" because "the constitutional validity of [the statute] was not raised in the trial court . . . ." ***In re Adoption of E.N.R.***, 42 S.W.3d 26, 32 (Tenn. 2001)(*discussing and quoting* ***Lawrence***). In the ***Adoption of E.N.R.*** opinion, the High Court stated "there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *Id*. Counsel in the ***Adoption of E.N.R.*** case had raised a question about the constitutionality of a statute only in closing argument in hope of preserving the issue for appeal. *Id*. The Supreme Court held "that the Court of Appeals properly refused to consider the [belated] constitutional challenge." *Id*. at 33. The Court also discussed the inability of the trial court to act "as gatekeeper to inquire whether notice has been provided to the Attorney General" when the issue is not properly raised in the trial court. *Id*. at 33.

We hold that any challenge to the constitutionality of Tenn. R. Civ. P. 15.02 has been waived. We also hold that Rule 15.02 is not so blatantly unconstitutional that the trial court's failure to *sua sponte* declare it unconstitutional does not amount to clear error. *See*, *id*.; Tenn.

---

[2]The Tennessee Rules of Civil Procedure carry force of law and are treated as statutes. ***Tennessee Dep't of Human Services v. Vaughn***, 595 S.W.2d 62, 63 (Tenn. 1980). Therefore, the Attorney General must be notified of any challenge to the constitutionality of a statute or regulation. Tenn. Code Ann. § 29-14-107(b)(2000); Tenn. R. Civ. P. 24.04.

-7-

R. App. P. 36.

Tenn. R. Civ. P. 15.02 is dispositive of all the other issues in this appeal. It provides, in relevant part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. *Provided, however, amendment after verdict so as to increase the amount sued for in the action shall not be permitted.*

*Id*. (emphasis added). The advisory commission comment to the Rule reiterates that "it is expressly provided that no amendment after verdict may increase the amount sued for." We have consistently applied the Rule according to its plain language. *See Benson*, 868 S.W.2d at 644 (Trial court properly denied post-judgment motion to amend demand from $25,000 to $40,000 to match the verdict because "T.R.Civ.P. 15.02 specifically disallows amendments to increase the amount of damage sued for after the verdict.").

It has long been the law in Tennessee that a verdict in excess of the damages demanded in the complaint is void to the extent of the excess. *Kesling v. Golden Security Life Ins. Co.*, 1990 WL 82502 at \*19 (Tenn. Ct. App. W.S., filed June 20, 1990)("The longstanding rule in this state has been that a verdict in excess of the amount pled is void to the extent [of] the excess. *Mullins v. Greenwood*, 6 Tenn. App 327 (1927)."); *Gaylor v. Miller*, 59 S.W.2d 502, 504 (Tenn. 1933). Thus, the Rule merely continues the prevailing practice in this state.

The complaint demanded compensatory damages "not to exceed two hundred thousand dollars ($200,000)." The trial court sustained a compensatory award of $200,000. We have previously stated that Miltier did not file a motion to amend the amount demanded in the complaint. However, Miltier, by counsel, did respond in writing to BOA's post-judgment motions with the assertion that the issue of damages above those demanded in the complaint was tried by the express and implied consent of the parties and therefore allowable. In the absence of such an assertion, we would be compelled to dispose of this case with the simple observation that, on the authority of *Mullins* and *Kesling,* the award of compensatory damages must be reduced to the $200,000 demanded in the complaint. We are willing to treat Miltier's assertions in his response to BOA's motions as, in substance though not in form, a motion made pursuant to Rule 15.02.

Miltier makes several attempts at an "end run" around the specific language in Rule 15.02. He first argues that the issue of damages over $200,000 was tried by "express or implied consent" and that the trial court erred in focusing on "the second half of Tenn. R. Civ. P. 15.02" and ignoring the language in Rule 15.02 that allows amendment of the pleadings to include issues to be tried by express or implied consent. The same argument was made and rejected in **Webb v. Poynter**, No.02A01-9707-CV-00168, 1999 WL 145257, at *3 (Tenn. Ct. App. M.S., filed March 18, 1999), a case initiated in general sessions court on a warrant demanding the jurisdictional limit of $10,000 and later appealed to circuit court. The plaintiff did not amend his demand in any manner when the case was appealed to circuit court, so the trial court limited its judgment to the amount demanded in sessions court. On appeal, one of the issues was whether the trial court should have allowed the plaintiff to recover more than he had demanded in his sessions court warrant. In **Webb**, we affirmed the trial court holding that the language in 15.02 allowing amendment by consent "does not allow [a party] to avoid the specific prohibition in Rule 15.02 [against] . . . amendment after verdict so as to increase the amount sued for in the action . . . ." **Id**. at *3. The **Webb** case is entirely consistent with **Benson**, 868 S.W.2d at 644, a published opinion. Also, we are persuaded by **Webb** that the specific prohibition of "amendment after verdict so as to increase the amount sued for" trumps the general rule of amendment of the pleadings to conform to the evidence with regard to amendments that would change the *ad damnum* after verdict.

Miltier also argues the two related points that (1) the nature of a pain and suffering award is such that only the jury can determine the amount to be awarded and (2) the instructions given in this case in fact invited the jury to determine a just and reasonable amount without regard to the amount demanded. We do not question the proposition that the jury is the body best equipped to determine the amount of pain and suffering based on the facts presented. However, we disagree that a jury instruction telling the jury that the amount of pain and suffering damages is their decision somehow overrides both the language of Rule 15.02 and the amount demanded in the complaint.

The fourth and final assertion made by Miltier is that the introduction of BOA's settlement offer of $250,000 into evidence constituted a waiver and implied agreement to the amendment of the amount demanded. The settlement offer was introduced into evidence pursuant to a stipulation that "[t]he settlement offer of $250,000 made by [BOA] . . . and the fact that it was rejected by the plaintiff is admissible." We have read the various references to the settlement offer, including the one by counsel for BOA in closing that we quoted verbatim in a preceding section of this opinion. BOA is careful to point out that there was an ominous punitive damages demand in this case and that the offer was to settle all claims and not just the compensatory damages. We also note that BOA was arguing to the jury the proposition that Miltier could have avoided much of mental distress that he was claiming by

-9-

simply accepting its settlement offer. We agree with BOA that the settlement offer of $250,000 and its presentation to the jury are not necessarily inconsistent with a compensatory damages demand and award of $200,000 so as to constitute a waiver.

Even if we were willing to read the introduction of the settlement offer and discussion of the same as some sort of waiver or implied consent, we are prevented from giving it effect by the explicit prohibition in Rule 15.02 against increasing "the amount sued for." We have previously held that the specific prohibition in Rule 15.02 against post-verdict motions to increase the amount demanded in a complaint is not subject to waiver. For example, in *Webb*, the argument was made that the defendant's failure to file a responsive pleading in circuit court to the sessions court warrant effectively waived any objection to the amount of damages determined by the trier of fact. 1990 WL 145257 at *3. We rejected the waiver argument for the same reason we rejected the argument that higher damages were tried by implied consent; "[the defendant's] failure to object to evidence of damages above $10,000 does not allow [the plaintiff] to avoid the specific prohibition in Rule 15.02." *Id*. A similar argument was made by the plaintiff in *Kesling*, 1990 WL 82502 at *18-19, based on repeated references by the parties and the court, directly to the jury, of a demand in excess of the amount actually demanded in the complaint. We rejected the plaintiff's waiver argument stating that the prohibition in Rule 15.02 against increasing the amount sued for after verdict left us "without power to grant the relief Kesling seeks." *Id*.; *see* ***Benford v. Nat'l Car Rental System***, 1986 WL 8282 (Tenn. Ct. App. M.S., filed July 30, 1986)("[T]he plaintiff overlooks the obvious point: the maximum verdict he could have received was $15,000, the amount sued for in the complaint. . . . . Neither could the deficiency in the pleadings be cured by amendment. Rule 15.02 . . . prohibits amendment after verdict so as to increase the amount sued for.").

We hold, based on the plain language of Rule 15.02 and the cases we have discussed, that the trial court did not err in limiting the compensatory damages award to $200,000 which was the amount demanded in the complaint. Because the components of the compensatory award, as reflected in the verdict form, "related solely to foreclosure and NOT from [the] lawsuit" greatly exceeded $200,000, we do not find it necessary to reach Miltier's issue of whether the trial court erred in disallowing damages related solely to the litigation. Even if we were to agree with Miltier's position, it would not result in any additional recovery by him.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Jesse R. Miltier. This case is remanded, pursuant to applicable law, for enforcement of the judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE